IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SIERRA BARR and CHRISTOPHER BARR, individually and as parents and Guardians of J.B., | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )   Case No.  19-2556-JWB |
| SEDGWICK COUNTY AREA EDUCATIONAL SERVICES INTERLOCAL COOPERATIVE #618, | )<br>)<br>)<br>)<br>) |
| Defendant. | )<br>) |

**MEMORANDUM AND ORDER**

This matter comes before the court on Defendant's motion to dismiss (Doc. 12). The motion has been fully briefed and the court is prepared to rule. (Docs. 13, 16, 17.) For the reasons stated herein, Defendant's motion is GRANTED.

**I.     Facts**

The following facts are taken from the allegations in the complaint. Plaintiffs Sierra and Christopher Barr are the parents of J.B., who was four years old at the time of the events that gave rise to their claims against Defendant Sedgwick County Area Educational Services Interlocal Cooperative #618 (the "Cooperative"). J.B. has been diagnosed with autism and is mostly non-verbal. Autism is a developmental disability that affects verbal and nonverbal communication and social interaction. According to the allegations, children with autism engage in repetitive activities, resist changes in daily routines, and display unusual responses to sensory experiences.

1

Autism also adversely affects a child's educational performance. (Doc. 1 at 2.) The Cooperative provides special education services to school districts in south-central Kansas.

In the fall of 2017, J.B. attended special education classes at Maize Elementary. He was receiving special education services from the Cooperative due to his autism diagnosis. Jessica Alves was a special education teacher and employed by the Cooperative. Alves taught at Maize Elementary. Initially, J.B.'s school experience was positive, and he was exhibiting measurable improvements. However, after the first couple of months, J.B.'s progress quickly deteriorated, and he exhibited an extreme aversion to going to school. Sierra Barr was concerned and asked Alves if something had changed at school. Alves informed Ms. Barr that an older child had recently started in J.B.'s class and Alves had needed to physically restrain this child on a few occasions. Alves suggested that J.B. may have been sensitive to seeing the physical restraint. (*Id.* at 3.)

J.B.'s regression continued into October and November. On one occasion, in October 2017, J.B. was locked in the bathroom alone. While locked in the bathroom, J.B. had been screaming and crying and he urinated all over himself. Alves allegedly sat outside the bathroom and left J.B. confined to the bathroom space. Ms. Barr asked Alves if J.B. had had any other problems using the restroom prior to this occasion and Alves told her that he had an accident on a prior occasion. Alves required J.B. to clean the floor after his accident. (*Id.* at 3-4.)

On January 30, 2018, Alves, and two paraprofessionals, Audrey Hawbaker and Ashley Barr, were attempting to transition J.B. from using an iPad to a different activity. J.B. did not immediately transition to the directed activity and began engaging in actions such as sucking his fingers and flailing his arms, which was not unusual behavior for J.B. during a transition. J.B's teachers were aware that this behavior is customary due to J.B.'s autism and they typically allowed

J.B. time to calm down to transition to the new activity.  Instead of allowing J.B. time to calm down, Alves quickly intervened to physically stop his behavior.  Alves told J.B. to stop sucking his fingers and placed J.B. in a physical restraint hold.  (*Id.* at 4-5.)

While being restrained by Alves, J.B. began to struggle.  J.B. moved his head quickly backwards which resulted in his head hitting Alves in her chest.  Alves immediately struck J.B. on the face.  J.B. then fell to the floor crying and crawled over to Hawbaker.  J.B. continued to cry, scream, roll around, and suck on his hands.  Alves then placed J.B. in another restraint. Plaintiffs allege that Alves's actions in restraining J.B. violated the Kansas Freedom from Unsafe Restraint and Seclusion Act (the "Act"), K.S.A. § 72-6153, which applies to restraints used in schools. Under the Act, a restraint may be used when a student presents a reasonable and immediate danger of physical harm.  Plaintiffs allege that J.B. did not present a reasonable and immediate danger of physical harm at the times Alves placed him in restraints.  (Doc. 1 at 5-6.)

Plaintiffs were not informed of the restraints and alleged assault until the evening of January 30.  The Cooperative also refused to share information from its investigation with Plaintiffs and allegedly failed to prepare a report. Ms. Barr contacted the Maize Police Department on January 31, 2018.  Ultimately, Alves was charged with a crime and entered a plea agreement "for the improperly applied and [] physical restraint on J.B."[1]  (*Id.* at 7.)

Plaintiffs allege that the Cooperative failed to properly train and supervise its staff which resulted in the harm to J.B. by Alves.  Plaintiffs further allege that the Cooperative failed to provide for the safe care of J.B. and that he has suffered in his limited educational progress.  As a result, J.B. has a severe lack of trust in adults at school which has "significantly derailed his educational progress and caused severe emotional and psychological harm." (*Id.* at 7.)  Plaintiffs also allege

---

[1] The complaint does not identify the crime charged or the crime to which Alves allegedly pleaded guilty.

3

that J.B. has suffered harm which includes an irrational fear and inability to use the school restroom, distrust of teachers, extreme aversion to attending school, and engaging in self-harm.

Plaintiffs filed this action against the Cooperative alleging violations under Title II of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12131, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794, for a failure to ensure that educational services are provided on an equal basis to J.B. and free from restraint and hostility. Plaintiffs have also asserted a claim under 42 U.S.C. § 1983 for failure to train and supervise its employees. Plaintiffs also bring claims of negligence under Kansas state law. The Cooperative moves to dismiss Plaintiffs' claims, arguing that Plaintiffs' federal claims are subject to exhaustion and that Plaintiffs have failed to sufficiently state a claim under the facts alleged.

## II.     Standard

In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiffs. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

## III.    Analysis

### A. IDEA Exhaustion

The Cooperative initially argues that Plaintiffs were required to exhaust their federal claims under the Individual with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400. The purpose of the IDEA is to provide a free and appropriate public education ("FAPE") to "all children with

4

certain physical or intellectual disabilities." 20 U.S.C. § 1412(a)(1)(A). "As defined in the Act, a FAPE comprises 'special education and related services'—both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction." *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748-49 (2017) (citing 20 U.S.C. §§ 1401(9), (26), (29)).

Other federal statutes also apply to individuals with disabilities. Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, under the Rehabilitation Act, a qualified individual with a disability shall not, "solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

Under these three different statutes, there is "some overlap in coverage" and "[t]he same conduct might violate all three statutes." *Fry*, 137 S. Ct. at 756. Notably, IDEA has a requirement of administrative exhaustion. 20 U.S.C. § 1415. The statute requires exhaustion whenever a plaintiff seeks relief "available under this subchapter" even if the plaintiff is pursuing relief under other federal laws. *Id.* § 1415(l).

Somewhat recently, the Supreme Court addressed the applicability of the exhaustion provision to non-IDEA claims. In *Fry*, the plaintiffs alleged that their child's school district discriminated against her in violation of the ADA and the Rehabilitation Act when she was prevented from bringing her service dog to school. 137 S. Ct. at 750–52. The Supreme Court held that "exhaustion is not necessary when the gravamen of the plaintiff's suit is something other than

5

the denial of the IDEA's core guarantee—what the Act calls a 'free appropriate public education.'" *Id.* at 748 (quoting 20 U.S.C. § 1412(a)(1)(A)). A plaintiff is only required to exhaust under the IDEA where the plaintiff "'seek[s] relief that is also available' under the IDEA." *Id.* at 752 (quoting 20 U.S.C. § 1415(l)). "[T]o meet that statutory standard, a suit must seek relief for the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available.'" *Id.* To determine whether Plaintiffs here are seeking relief for the denial of a FAPE, the court must "look to the substance, or gravamen, of the plaintiff's complaint." *Id.*

In this case, Plaintiffs have not alleged that they are seeking relief for the denial of an appropriate education. Plaintiffs do allege that J.B.'s education has been affected due to the harms by his extreme aversion to attending school. However, Plaintiffs do not allege a failure to comply with J.B.'s individual education plan ("IEP"), which is the "primary vehicle for providing each child with the promised FAPE." *Id.* at 749 (citations omitted.) But the Supreme Court has instructed courts to look beyond the words used in the complaint as the plaintiff could be seeking relief for a failure to provide a FAPE, "even if not phrased or framed in precisely that way" by using "magic words." *Id.* at 755.

In determining whether the gravamen of Plaintiffs' complaint is the denial of a FAPE, the court may consider two hypothetical questions: "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance?" *Id.* at 756 (emphasis in original). If the answers are yes, then it is unlikely that the complaint is about the denial of a FAPE. *Id.* A third issue the *Fry* Court suggested was a "sign that the gravamen of the suit is a denial of a FAPE" is

6

to review the history of the proceedings to determine whether the plaintiff previously invoked the IDEA's administrative process to handle the dispute. *Id.* at 757.

In this case, Plaintiffs argue that the allegations in the complaint do not concern the denial of a FAPE but are about the harmful behavior by his teacher which included the unlawful physical assault and restraint. Plaintiffs assert that this action could have been brought by them if this conduct occurred in a different public facility and that an adult could bring this action if he was subject to the same conduct while visiting the school. (Doc. 16 at 6.) In response, the Cooperative argues that restraint techniques and the Kansas Freedom from Unsafe Restraint and Seclusion Act (the "Act") are only applicable in a school setting. (Doc. 17 at 5-6.) The Cooperative also asserts that a Tenth Circuit decision is controlling in this matter.

Although the Cooperative is correct in that the Act applies to restraints in a school setting, the Cooperative does not otherwise explain why this action could not have been brought if it would have occurred in a public library or happened to an adult in the school. The allegations in the complaint state that J.B. was struck in the face and was physically restrained when he was not a threat to himself or any other individual. Additionally, J.B. was locked in the bathroom, causing him to suffer emotional distress. J.B. was also forced to clean up after himself after he urinated on the floor. While J.B. has alleged that he has been harmed by these events which resulted in an aversion to school and a setback in his education, the gravamen of the wrongful conduct is not that it violated the IDEA or denied him any services but that it involved harmful behavior by the Cooperative's teacher. *J.P. v. Williamson Cty. Educ. Servs.*, No. 3:16-CV-879-NJR-DGW, 2018 WL 9651501, at *3–5 (S.D. Ill. Mar. 27, 2018) (finding no requirement of exhaustion when the allegations included being confined in a closet and using harmful techniques to restrain). Although there is a Kansas statute regarding the use of restraints in schools, the Cooperative offers no

7

authority for its position that an adult could not bring a cause of action if it was subject to an improper physical restraint, getting punched, or locked in the bathroom while at Maize Elementary.  *See id*. at *5, n. 1 ("The fact that it is unlikely that a public employee located in a public library or theater would use restraint and seclusion on a disabled person when that person's disability manifested does not mean that Plaintiffs could not bring the same claims if it were to happen…*Fry* does not ask whether that same alleged conduct is likely to occur in those other settings, but instead has us presume the alleged conduct occurred."); *but see N.S. by & through J.S. v. Tennessee Dep't of Educ*., No. 3:16-CV-0610, 2017 WL 1347753, at *11 (M.D. Tenn. Apr. 12, 2017) ("Isolation and restraint techniques are not implemented on adult employees or visitors of the Knox County schools, nor are they implemented on minors such as the plaintiffs in other public institutions.")

Notably, in addressing the applicability of its two-question test, the Supreme Court included a footnote that would support a finding that exhaustion is not required here:

> The school districts offer another example illustrating the point. They suppose that a teacher, acting out of animus or frustration, strikes a student with a disability, who then sues the school under a statute other than the IDEA. Here too, the suit could be said to relate, in both genesis and effect, to the child's education. But the school districts opine, we think correctly, that the substance of the plaintiff's claim is unlikely to involve the adequacy of special education—and thus is unlikely to require exhaustion.  A telling indicator of that conclusion is that a child could file the same kind of suit against an official at another public facility for inflicting such physical abuse—as could an adult subject to similar treatment by a school official. To be sure, the particular circumstances of such a suit (school or theater? student or employee?) might be pertinent in assessing the reasonableness of the challenged conduct. But even if that is so, the plausibility of bringing other variants of the suit indicates that the gravamen of the plaintiff's complaint does not concern the appropriateness of an educational program.

*Fry*, 137 S. Ct. at 756, n. 9.

This example supports a finding that Plaintiffs' complaint does not concern the appropriateness of the educational program at Maize Elementary but rather the wrongful conduct

8

of the Cooperative's teacher -- conduct that allegedly resulted in criminal charges. Moreover, although the Cooperative argues that J.B.'s IEP would likely include a discussion of discipline and the use of restraints, the allegations in the complaint do not allege that the Cooperative failed to comply with the IEP.

The Cooperative spends a significant amount of time arguing that *Carroll v. Lawton Indep. Sch. Dist. No. 8*, 805 F.3d 1222 (10th Cir. 2015), is applicable. *Carroll,* however, was decided prior to *Fry*. In *Carroll*, the court of appeals stated, under the law at that time, that exhaustion was required when "the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies. [] If so, exhaustion of those remedies is required." *Id.* at 1227. Any ambiguity was construed "in favor of exhaustion." *Id.* Under *Fry*, the Court held the Sixth Circuit did not utilize the correct analysis when it asked whether the injuries were, "broadly speaking, 'educational' in nature" and that a court must undertake to determine whether the gravamen of the complaint "charges, and seeks relief for, the denial of a FAPE" when deciding if exhaustion was required. 137 S. Ct. at 758. Moreover, the Tenth Circuit noted that the plaintiffs in *Carroll* had alleged complaints regarding the child's "current educational situation" and that the IDEA's "prospective educational benefits are presumptively well suited to remedy the alleged educational injuries." 805 F.3d at 1228. In its discussion, the court of appeals recognized that it has held that exhaustion is not required when the complaint involves physical and non-educational injuries. *Id.* (citing *Padilla ex rel. Padilla v. Sch. Dist. No. 1 in City & Cty. of Denver, Colo.*, 233 F.3d 1268, 1274 (10th Cir. 2000)).

This court is required to apply the *Fry* standard in determining whether exhaustion under IDEA is required. *Fry*, 137 S. Ct. at 758. Under that standard, the court finds that the gravamen of Plaintiffs' complaint is the wrongful conduct by Alves and not the denial of a FAPE. Other

9

courts examining complaints with similar allegations of physical abuse and hostile treatment have held that exhaustion is not required based on the standard set forth in *Fry*. *See J.P.*, 2018 WL 9651501, at *3–5; *K.G. by & through Gosch v. Sergeant Bluff-Luton Cmty. Sch. Dist.*, 244 F. Supp.3d 904, 921 (N.D. Iowa 2017) (finding that the gravamen of the complaint is the "unlawful and unreasonable use of physical force" and not a violation of the IDEA.); *P.H. by Luna v. Tehachapi Unified Sch. Dist.*, No. 1:L17-cv-00257-DAD-JLT, 2017 WL 3085020, at *1, 4 (E.D. Cal. Jun. 9, 2017) (finding that exhaustion was not required when the allegations were that the child suffered from physical and psychological abuse when she was unlawfully restrained, screamed at, and left in soiled clothing.); *cf. Rohrbaugh by & through Rohrbaugh v. Lincoln Intermediate Unit*, 255 F. Supp. 3d 589, 596–97 (M.D. Pa. 2017)(finding complaint alleged a denial of a FAPE based on allegations of improper restraint and failure to comply with the IEP, including the failure to provide a properly trained full-time personal care assistant).

Therefore, the Cooperative's motion to dismiss on this basis is denied.

### B. ADA and Rehabilitation Act Claims

Plaintiffs' complaint alleges that the Cooperative is liable for discrimination under both the ADA and § 504 of the Rehabilitation Act. The Cooperative argues that Plaintiffs have failed to state a claim under both statutes. Both provisions are substantially similar and courts typically analyze them together. *See Cohon ex rel. Bass v. New Mexico Dep't of Health*, 646 F.3d 717, 725–26 (10th Cir. 2011).

To state a prima facie claim under § 504 of the Rehabilitation Act, Plaintiffs must allege that: (1) J.B. is disabled under the Act; (2) he is "otherwise qualified" to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against J.B. because of his disability. *Id.* To state a claim under Title II of the ADA, Plaintiffs must allege

that: (1) J.B. is a qualified individual with a disability; (2) he was excluded from participation or denied benefits; and (3) such exclusion or denial was by reason of disability. *Id.* At issue here is whether Plaintiffs have sufficiently alleged that J.B. was discriminated against or denied benefits due to his disability. Under both the ADA and the Rehabilitation Act, "a plaintiff is obligated to show that he was otherwise qualified for the benefits he sought and that he was denied those solely by reason of [his] disability." *E.C. v. U.S.D. 385 Andover*, No. 18-1106-EFM, 2019 WL 2073927, at *4 (D. Kan. May 10, 2019) (quoting *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (internal citations omitted) (emphasis added)).

The Cooperative argues that Plaintiffs have failed to plausibly allege that J.B.'s treatment was because of his disability. Plaintiffs argue that they have alleged that the unlawful conduct was due to his disability. (Doc. 16 at 13-14.) Plaintiffs argue that J.B.'s conduct is typical of children with autism and that Alves responded in the manner that she did because J.B. could not verbally communicate. The allegations in the complaint, however, do not plausibly allege that Alves's actions were taken because of J.B.'s disability nor do they allege that J.B. was discriminated against because of his disability. Plaintiffs have alleged that Alves restrained J.B. "for purposes of discipline, punishment, or convenience." (Doc. 1 at 6.) This allegation, construed liberally, does not suggest that Alves's actions were because of J.B.'s disability.

The only allegations in the complaint regarding discrimination and equal treatment are conclusory. Plaintiffs allege that J.B. is entitled to protection from discrimination under the ADA and the Rehabilitation Act and that the Cooperative has failed by not providing its programs in a full and equal manner to disabled persons. (Doc. 1 at 8-10.) However, the complaint makes no factual allegations that would support a finding that the Cooperative discriminated against J.B. or denied benefits because of his disability. Rather, the allegations are that Alves was frustrated with

11

J.B. and took actions for punishment. While Plaintiffs argue in their motion that Alves would not treat a child without autism as she treated J.B., the complaint does not make those same allegations.[2] It is silent regarding the treatment of other children with or without disabilities.

Because Plaintiffs have not plausibly alleged that the Cooperative's actions, or those of Alves, were taken because of J.B.'s disability, Plaintiffs have failed to state a claim under the ADA and the Rehabilitation Act. The Cooperative's motion to dismiss those claims is granted.

## C. 1983 Claim

Plaintiffs have also alleged a failure to train and supervise claim pursuant to 42 U.S.C. § 1983 asserting that the Cooperative violated J.B.'s right to Equal Protection and his right to bodily integrity under the Fourteenth Amendment. The Cooperative moves to dismiss this claim on the basis that Plaintiffs have failed to sufficiently allege facts regarding what training or supervision was lacking and failed to show the Cooperative acted with deliberate indifference

The Cooperative cannot be sued under § 1983 solely for the acts of its employees. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Plaintiffs must allege that a policy or custom was the moving force of the alleged injury. *Id.* This can be a failure to adequately train or supervise employees due to deliberate indifference of potential injuries to the public. To state such a claim, Plaintiffs must show first that the training was inadequate and then satisfy the following: (1) Alves violated J.B.'s constitutional rights; (2) Alves' conduct arose under circumstance that constitute a usual and recurring situation; (3) inadequate training or supervision demonstrates a deliberate indifference towards J.B. and other students; (4) and there is a direct

---

[2] In their brief, Plaintiffs assert that granting the Cooperative's motion would be like "writ[ing] a blank check for school districts to respond to behavior typical of a disabled individual with physically [sic] restraint or assault." (Doc. 16 at 15.) The court's decision does not legitimize the alleged misconduct of Alves or her treatment of J.B. Rather, this decision is based solely on whether the allegations set forth in the complaint plausibly state a claim under the particular statutes identified by Plaintiffs as those statutes have been interpreted by the Supreme Court and the Tenth Circuit.

causal link between the constitutional deprivation and inadequate training. *Carr v. Castle*, 337 F.3d 1221, 1228 (10th Cir. 2003). For the third requirement, this may be satisfied when the Cooperative "has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct." *Id.* at 1229 (citation omitted). Plaintiffs have not alleged a pattern of tortious conduct. Rather, Plaintiffs merely allege that "even one instance of improperly applied restraint greatly increases the likelihood of future incidents of restraint…The implementation of training and procedures regarding the proper use of restraints and for addressing special needs children is a necessity…." (Doc. 1 at 5, 11.) Notwithstanding Plaintiffs' conclusory allegations, Plaintiffs essentially argue that the single instance of unlawful restraint is sufficient to state a failure to train and supervise claim. It is not.

"Where a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show that the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued." *Hollingsworth v. Hill*, 110 F.3d 733, 743 (10th Cir. 1997) (citation omitted). Plaintiffs have not made any plausible allegation that the allegedly deficient (but unidentified) training or failure to supervise, was directed by any "final policymaker," reflecting "a deliberate choice to follow a course of action from among various alternatives." *Estate of Holmes v. Somers, et al.*, 387 F. Supp.3d 1233, 1262 (D. Kan. 2019), *aff'd sub nom. Couser v. Gay*, 959 F.3d 1018 (10th Cir. 2020) (citing *Thomas v. City of Snyder, Okla.*, 103 F.3d 145, 1996 WL 662453, at \*5–6 (10th Cir. 1996)). Plaintiff has also failed to allege facts regarding the inadequacy of the training to show that the

13

Cooperative had knowledge of its inadequacies and was deliberately indifferent in failing to act. *Carr*, 337 F.3d at 1229.

Therefore, Plaintiffs' § 1983 claim is dismissed.

### D. Negligence

Plaintiffs have also alleged claims of negligence, negligent supervision, and negligent training. The Cooperative argues that the claims of negligent supervision and negligent training are no longer valid claims under Kansas law as Kansas only recognizes a general negligence claim. *See Reardon v. King*, 310 Kan. 897, 907, 452 P.3d 849, 857 (2019). Plaintiffs agree and assert that they will amend their complaint to allege these theories in a single negligence claim. (Doc. 16 at 17.)

The Cooperative also urges the court to decline supplemental jurisdiction over Plaintiffs' remaining negligence claim. Under 28 U.S.C. § 1367(c)(3), the court may decline to exercise supplemental jurisdiction over the state-law claim that remains. *See Carroll*, 805 F.3d at 1230. The court declines to exercise supplemental jurisdiction in this matter and will dismiss Plaintiffs' remaining negligence claim, without prejudice.

### IV. Conclusion

The Cooperative's motion to dismiss is GRANTED. (Doc. 12.) Plaintiffs' complaint is dismissed, without prejudice.

IT IS SO ORDERED. Dated this 17th day of September 2020.

                                                                    s/ John W. Broomes  
                                                                    JOHN W. BROOMES  
                                                                    UNITED STATES DISTRICT JUDGE